UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RSUI INDEMNITY COMPANY, INC.,

Plaintiff,

v.

VISION ONE, LLC, *et al.*,

Defendants.

Case No. C08-1386RSL

ORDER ON CROSS MOTIONS REGARDING COVERAGE

## I. INTRODUCTION

This matter comes before the Court on a motion filed by plaintiff RSUI Indemnity Company, Inc. ("RSUI") and on a cross motion filed by defendants Vision One, LLC ("Vision One") and Berg Equipment & Scaffolding Co., Inc. ("Berg") for partial summary judgment regarding the existence of insurance coverage. RSUI provided commercial excess liability insurance to Berg. RSUI contends that the residential work exclusion in its policy precludes coverage for liability Berg incurred as a result of its work. For the reasons set forth below, the Court grants defendants' motion and denies plaintiff's motion.

## II. ANALYSIS

**A.     Background Facts.**

ORDER ON CROSS MOTIONS
REGARDING COVERAGE - 1

1  This matter arose from the collapse of a concrete walkway slab on October 1, 2005
2  during the construction of a project called The Marcato in Tacoma, Washington. At the
3  time of the collapse, a condominium called the Reverie at Marcato was under
4  construction. Berg supplied and delivered shoring equipment to the concrete
5  subcontractor, D&D Construction, Inc. ("D&D"), along with drawings depicting the
6  suggested layout of the equipment. Berg also sent an employee to the site on several
7  occasions to discuss and observe the installation of the equipment. D&D erected the
8  shoring equipment that ultimately failed and collapsed, which resulted in the failure of a
9  concrete slab and injury to at least twelve workers.

After the collapse, Vision One, the owner/developer of the project, sued insurer Philadelphia Indemnity and Berg in Pierce County Superior Court. The claims against Berg included breach of contract and products liability for the allegedly defective shoring equipment. Berg ultimately settled with Vision One, entered into a consent judgment in the amount of $2.3 million collectible only against RSUI, and assigned its rights against RSUI to Vision One. Because of the settlement, none of the allegations against Berg was adjudicated in state court. The settlement was deemed reasonable in September 2008.

Berg's primary insurer, Admiral Insurance ("Admiral"), defended Berg in the state court litigation and contributed its policy limit of $1 million toward the settlement. RSUI denied coverage based on a residential work exclusion. The exclusion provides, "This insurance does not apply to any liability arising out of your operations or 'your work' on any 'residential project.'" East Coverage Decl., Ex. D at Propel 000095. The exclusion contains the following definitions and terms:

- "Residential project" is defined to mean "apartments, single and multi family dwellings, townhouses, duplexes, condominiums or cooperatives . . . 'mixed-use buildings' or any other places of domicile, and shall include appurtenant structures and common areas."

- "However, this exclusion does not apply to your operations or 'your work' that is on or in commercial space in 'mixed-use buildings.'"

- "Mixed-use buildings" shall mean structures and improvements thereto, which contain both residential units and commercial space.

Id. In turn, the underlying insurance defines "your work" as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." Id., Ex. A at Propel 000188. The term "operations" is not defined. The policy also defines "Your product" as "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by You . . . ." and includes "The Providing of or failure to provide warnings or instructions." Id. The Admiral policy contained the following exclusion for residential work:

> This insurance does not apply to any "Bodily Injury", or "Property Damage" . . . arising out of any residential work, including . . . condominiums and townhouses, other than the erection of scaffolding, conducted by you or for you.

Declaration of Stacie Baratti, ("Baratti Decl."), Ex. A. Admiral defended Berg with a reservation of rights in the underlying litigation because Berg did not erect scaffolding, and because it "understood that Berg was not directly working on the project." Id. at ¶ 6.

The "Declarations" page of the Admiral policy, which is expressly incorporated into the RSUI policy, states that premiums were paid for the following, written in all capital letters, "Operations rated as: contractors equipment–ladders, scaffolds, scaffolding, sidewalk bridges, towers and equipment incidental thereto–rented to others." East Coverage Decl., Ex. A at Propel 000136.

**B.      Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to

ORDER ON CROSS MOTIONS
REGARDING COVERAGE - 3

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C. Coverage.**

"The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." Mutual of Enumclaw Ins. Co. v. T&G Constr., Inc., 165 Wn.2d 255, 268 (2008). Under Washington law, the Court must liberally construe the policy in favor of finding coverage. See, e.g., Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694 (2008). Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning; they are "strictly construed against the insurer." Stuart v. Am. States Ins. Co., 134 Wn.2d 814, 818-19 (1998).

As an initial matter, RSUI issued "'follow form' excess liability insurance," so it

ORDER ON CROSS MOTIONS
REGARDING COVERAGE - 4

was subject to the "same terms, conditions, agreements, exclusions and definitions" as the primary insurance, except with respect to "any provision to the contrary" in RSUI's policy. Edmonds Decl., Ex. H. at pp. 106-07. RSUI argues that the "key difference" between the policies is that RSUI, unlike Admiral, did not carve out an exception to the exclusion for the erection of scaffolding. RSUI's Motion for Summary Judgment at p. 7. The distinction, however, is irrelevant because it is undisputed that Berg did not erect scaffolding on the project. For that reason, the difference cannot justify the denial of coverage.

The Court must also determine whether RSUI has met its burden of showing that the residential work exclusion bars coverage. Berg argues that it is inapplicable because it did not perform work or operations "on" the project, and because even if it did, the project was "mixed use" rather than residential. As for the first issue, the "your work" exclusion is ambiguous because it relies on the undefined term "your operations." That undefined term reappears in the definition of "your work" along with the undefined term "work." As the parties' filings show, those terms are subject to multiple definitions, as is the term "on" a residential project. RSUI contends that Berg worked on the project by preparing the drawings and delivering materials to the job site. Berg contends that it did not perform any work or operations "on" the project. The Court finds Berg's argument compelling for several reasons. Most importantly, it is supported by the policy language. The policy requires that the work be performed "on" the project, but Berg did not perform work on the job site. Rather, it provided only goods and services incidental to those goods. Furthermore, the definition of "your work" includes two subparts; the second subpart, regarding "[m]aterials, parts or equipment furnished in connection with such work or operations," would be superfluous if the provision of equipment was actually

included in the definition of "work" or "operations." Instead, the drafter clearly contemplated that the activities were distinct. A similar distinction is contemplated between "your work" and "your product," which is separately defined and not excluded. The work that Berg performed falls more squarely within the "your product" definition, which includes supplying "goods or products" and the provision of instructions regarding the same. If RSUI had intended to exclude the work that Berg did, it could have excluded "your product," or drafted the "your work" exclusion more broadly. Declaration of Robert Taylor, Ex. A at p. 1 ("RSUI had the opportunity to clearly exclude this liability but chose instead to rely on a form exclusion that does not fit the facts of this case."); Chandler Decl., Ex. E (including a more broadly worded "your work" exclusion).

Moreover, Berg's interpretation of the terms best matches the probable intent of the parties as reflected by the policy language and other evidence in the record. It is unlikely that Berg would contract for insurance that did not cover the work it performed. As for RSUI's intent, its own underwriting file contained the following handwritten notation regarding Berg: "Equipment rented w/o operations." Thorne Decl., Ex. C. That notation undermines the contention that RSUI considered Berg's work to be covered operations. The experts also support Berg's position.[1] Thorne Dep. at p. 127 ("It has been my experience in handling hundreds of construction related claims that renting, leasing or delivering materials to a construction site is not considered work or operations performed on a construction site.").[2] Finally, ambiguities in the contract must be

---

[1] RSUI relied on an expert regarding the alleged bad faith of its denial, but did not rely on an expert opinion in its motion regarding coverage.

[2] See also Taylor Decl. at ¶ 6 (explaining that "your work" refers to "something physical that a contractor has created by its construction services on or in a building or structure;" "your product" refers to "companies who supply materials or equipment to the

ORDER ON CROSS MOTIONS
REGARDING COVERAGE - 6

construed against the drafter.  See, e.g., Schwindt v. Underwriters at Lloyd's of London, 81 Wn. App. 293 (1996).

RSUI contends that when Berg completed its application for insurance, it defined its "operations."  However, RSUI's form used the term "operations;" Berg simply filled in the blank line.  Nor did the application ask whether Berg performed operations "on" a residential project.  Without that context, the completion of the application and the reference to operations on the declarations page of the policy cannot be viewed as concessions.

RSUI also contends that the following policy exclusion bars coverage: "Does not include vending machines or other property rented to or located for the use of others but not sold." East Coverage Decl., Ex. K at Propel 000188.  Even if the equipment was covered by that exclusion, Berg's allegedly faulty drawings and related services clearly were not.[3]  For all of these reasons, the Court finds that Berg's work does not fall within the exclusion.

Although that finding alone is sufficient to find that coverage exists, the Court also notes that RSUI has failed to show that the project was "residential."  The policy

---

site but do no necessarily perform construction activities there."); Chandler Decl. at ¶ 5 ("Had RSUI intended to exclude losses caused by products such as Berg's shoring, it could have done so simply by importing from the Admiral policy the term 'Your Product' just as it did with the term 'Your Work.'").

[3] Berg has also filed compelling evidence that the exclusion is inapplicable to the provision of construction equipment.  Supplemental Declaration of Daniel Chandler at ¶ 5; see also American Empire Surplus Lines Ins. Co. v. Scanray Corp., 1992 U.S. App. LEXIS 11730 at *16-20 (interpreting a similar exclusion and finding it inapplicable because a "layperson could easily read the policy to cover anything 'manufactured, . . . handled, or distributed by the named insured' in addition to anything 'sold' by the insured.").

exclusion contains an exception for work "that is on or in commercial space in 'mixed-use buildings.'" Even if Berg performed "work" or "operations" as defined in the exclusion, it did so on a commercial walkway. The walkway was designed to provide ingress and egress to commercial shops that were planned for the next phase of the project. Hebert Decl. ¶ 3, Ex. C; Chandler Decl. at ¶¶ 10, 14, Exs. H & G. The walkway was subject to commercial easements, it was beyond the control of the Reverie homeowners' association, and was built specifically for access to planned retail stores. Chandler Decl. at ¶ 14; Hebert Decl. at ¶ 8. Before the collapse, the City of Tacoma had passed an ordinance allowing for retail and mixed-use space at the site. Hebert Decl., Ex. G. Although RSUI argues that the commercial portion has not been built and might never be built, the walkway was designed and built to serve a commercial purpose. Cf. Hebert Dep. at pp. 124-25 (explaining that the planned commercial phase of the project was delayed because of the intervening economic recession). Finally, RSUI contends that Berg worked only on a residential structure because D&D placed the shoring equipment in the residential parking garage. Above that garage, however, was the walkway, which is what collapsed. Accordingly, the Court finds that RSUI's policy provided coverage.

## III. CONCLUSION

For all of the foregoing reasons, defendants' motion regarding coverage (Dkt. #46) is GRANTED and plaintiff's motion regarding coverage (Dkt. #38) is DENIED.

DATED this 18th day of December, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON CROSS MOTIONS
REGARDING COVERAGE - 8